

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOs. AP-76,615 and AP-76,616

## EX PARTE RONALD DAVID ROGERS, Applicant

### ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
### CAUSE NOs. 39154A HCI & 39155 HC1 IN THE 268TH DISTRICT COURT
### FROM FORT BEND COUNTY

**MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. ALCALA, J., did not participate.**

## O P I N I O N

Applicant pleaded guilty to aggravated assault with a deadly weapon and attempted aggravated sexual assault. A jury assessed punishment of a total of seventy-five years' confinement and $10,000 in fines. On appeal, the First Court of Appeals affirmed Applicant's conviction. *Rogers v. State*, 305 S.W.3d 164 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Applicant filed applications for writs of habeas corpus, alleging that his attorney provided ineffective assistance of counsel at the punishment stage of trial. The convicting

court filed findings of fact and conclusions of law, recommending that we deny relief. This Court filed and set the applications. We now grant relief and vacate Applicant's sentences so that the trial court may conduct new punishment proceedings.

## FACTS & PROCEDURAL HISTORY

Applicant was convicted of aggravated assault with a deadly weapon and attempted aggravated sexual assault. Wearing a white mask, he hid in the stall of a women's restroom in an office building and attacked a woman, T.G., as she exited another stall. He pinned her to a wall and held a knife to her throat. T.G. pushed Applicant and began screaming. She ran out of the restroom, and other workers noticed her upset state. Applicant tried to leave the building but was stopped after a struggle with bystanders. When Applicant was apprehended, he was found carrying several items, including nylon rope, duct tape, handcuffs, gloves, and a glass pipe. He pleaded guilty to attempted sexual assault and aggravated assault with a deadly weapon.

During the punishment phase, the jury heard evidence of a prior offenses committed by Applicant. Eleven years earlier, Applicant hid in the restroom of an office building, wearing a white stocking over his face. While holding a knife, he attacked a woman, who escaped by grabbing Applicant by the face and pulling down. He took the stocking off of his head and ran off. He was later apprehended, but his adjudication was deferred. After deferred adjudication was revoked, he was sentenced to ten years' imprisonment.

The jury also heard evidence about an extraneous offense, the rape of a woman in her second-floor apartment. During the punishment phase of trial, C.R. testified that she heard something outside on her balcony and she saw a shadow. She called 911, but the call did not go through. A man broke through the glass of her window and grabbed her. The man covered her mouth and eyes and told her to be quiet or he would kill her. He tossed her on her bed and taped her arms, legs, and eyes with duct tape. She stated that he raped her and then poured a substance that smelled like bleach onto her genitalia, which "burned so bad." He raped her again and poured more of the substance on her, which "hurt even worse." As he left the apartment, the man told her that he was going to get money from the credit card that he took from her purse.

C.R. testified that she saw part of the man's face. She worked with a sketch artist to make a composite sketch. Investigators in C.R.'s case, learning of Applicant's arrest, noted the use of duct tape, Applicant's similar physical characteristics, and the proximity of Applicant's home to C.R.'s home. C.R. identified Applicant in a lineup based on his hair, profile, movement, and voice. She testified that there was something about him that made her want to "throw up when I saw this man," and she "didn't have any doubt that that was the person" who raped her.

The jury was instructed that it could consider evidence of an extraneous crime or bad act in assessing punishment, but only if the State showed beyond a reasonable doubt that the extraneous crime or bad act was committed by Applicant or was one for which

the Applicant could have been held criminally responsible. The jury assessed punishment totaling sixty years' confinement with a $5,000 fine for the aggravated assault, and fifteen years' confinement with a $5,000 fine for the attempted aggravated assault.

At the time of the punishment hearing, Applicant was under indictment for the crimes against C.R. The indictments were dismissed over a year later. Six months after the indictments were dismissed, another individual was identified through CODIS (the FBI's combined DNA index system) as the contributor of unidentified DNA found in the rape kit. That person pleaded guilty to the aggravated sexual assault of C.R. and was sentenced to twenty years in prison.

Applicant filed applications for post-conviction writs of habeas corpus. The State filed an answer and moved the convicting court to designate issues of fact to be resolved. Applicant's trial counsel, an Assistant District Attorney, a District Attorney Investigator, and a former Assistant District Attorney each filed an affidavits relevant to the resolution of Applicant's ground for relief. The trial court found that all of the affidavits were credible.

Applicant asserted that trial counsel provided ineffective assistance of counsel at his punishment trial by failing to adequately investigate the sexual assault of C.R. Applicant was wearing an electronic monitor when C.R. was attacked. Applicant denied involvement in the sexual assault and told his trial counsel to contact his parole officer to confirm his whereabouts at the time that C.R. was attacked. In his affidavit, trial counsel

stated that he contacted the parole officer, but he did not remember the conversation and he did not subpoena her. The monitoring records showed that Applicant was at his residence from 8:48 p.m. until 7:03 a.m. C.R. was attacked around midnight at her apartment, which was approximately five miles from Applicant's residence, indicating that Applicant could not have assaulted C.R.[1]

Also at issue is whether trial counsel was deficient for not presenting evidence that Applicant's DNA had been excluded from the rape kit. Trial counsel stated that, had he known about the DNA results, he would have presented the evidence at trial and called an individual from the testing company to testify. However, based on affidavits from representatives of the State, the court found that Applicant's trial counsel was told that DNA test results excluded Applicant, and the results were included in a supplemental report from C.R.'s case.

The court found that trial counsel and the Assistant District Attorney had a heated discussion about whether evidence of the extraneous offense should be introduced despite the DNA exclusion. The State reasoned that Applicant could still be the perpetrator because C.R. claimed that she had been assaulted by a foreign object, and the DNA profile may have belonged to her boyfriend, who was not available for testing at the time.

---

[1] Police officers searched Applicant's residence eighteen days after C.R. was sexually assaulted, and Applicant's electronic monitor was found in several pieces. The record does not develop the issue further. However, the monitoring records indicated movement before and after the attack, suggesting that Applicant was in his home, wearing the monitor, at the time that C.R. was assaulted.

The trial court found that counsel's performance was deficient in failing to discover allegedly exonerating evidence about Applicant's whereabouts at the time that C.R. was sexually assaulted. The court also found that counsel's performance was deficient by failing to bring evidence that Applicant's DNA was excluded from the sample taken from C.R.'s rape kit.

The convicting court found that there was no reasonable probability that the jury would have assessed a lesser punishment if the electronic monitor evidence or the DNA exclusion evidence had been presented to the jury. During trial, Applicant's counsel's stated strategy was to adduce testimony from C.R. that she never positively identified Applicant as the person who sexually assaulted her. C.R. admitted that she never saw his entire face and that other men in Harris County shared Applicant's body-frame type. Counsel argued that C.R. did not identify Applicant because her identification was based on his hair, stature, movement, and voice. He also elicited testimony from a detective who said that there have been times in which the victim identifies the wrong person. In closing arguments, counsel asked the jury to hold the State to the standard of beyond a reasonable doubt.

The court also found that the State asked for life imprisonment and a $10,000 fine for the aggravated assault and twenty years and a $10,000 fine for the attempted sexual assault. Applicant's trial counsel asked the jury to consider "the lower end of 20 to 40 years." The jury assessed punishment for a total of seventy-five years' imprisonment and

$10,000 in fines.

The court made conclusions of law, determining that Applicant failed "to prove by a preponderance of the evidence his sole ground for relief alleging ineffective assistance of counsel based on an alleged failure to adequately investigate his electronic monitoring records." The court also stated that he "was not provided ineffective assistance of counsel in the failure to present evidence showing that DNA testing excluded Applicant as the contributor of sperm in the C.R. case." The final recommendation to this Court was that relief should be denied.

## ANALYSIS

To determine whether to grant habeas corpus relief for ineffective assistance of counsel, an applicant must establish that: (1) trial counsel's performance was deficient; and (2) there was a reasonable probability that the result of the proceedings would have been different but for trial counsel's unprofessional performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 696 (1984).

Because there are "countless ways" to provide effective assistance, judicial scrutiny of trial counsel's conduct must be highly deferential. *Id.* at 689. Given the difficulty in evaluating trial counsel's performance, the defendant must overcome the presumption that "the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 100-01 (1955)). Trial counsel's ineffectiveness must be proved by a preponderance of the evidence. *Id.*

If the applicant proves deficient assistance, he must show that prejudice occurred with a probability "sufficient to undermine confidence in the outcome." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (quoting *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986)). He must "prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable verdict." *Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005) (citing *Warden v. Visciotti*, 537 U.S. 19, 22-23 (2002)). It is not enough to show that trial counsel's errors had some conceivable effect on the outcome of the punishment assessed. *Strickland*, 466 U.S. at 693.

As we have repeatedly held, this Court is not bound by the findings of the trial court, but "we should follow them where they are supported by the record." *Ex parte Lemke*, 13 S.W.3d 791, 796 (Tex. Crim. App. 2000). We cannot imagine a tactical reason for not presenting evidence of the electronic monitoring report or the DNA exclusion. The trial court's findings that counsel was deficient are supported by the record. However, the determination that Applicant was not harmed by trial counsel's errors is not supported by the record. Given the inflammatory and prejudicial nature of C.R.'s testimony about the extraneous offense, we cannot agree with the recommendation of the convicting court.

### Deficient Performance

During the punishment phase, "evidence may be offered by the State and the

defendant as to any matter the court deems relevant to sentencing," including the defendant's prior criminal record and any other evidence of an extraneous crime or bad act. TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1). "Relevant evidence" is evidence tending to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

Rule 401 is helpful in determining what evidence should be admissible under Article 37.07, § 3(a), but the definition is not a perfect fit in the punishment phase. *Sunbury v. State*, 88 S.W.3d 229, 234 (Tex. Crim. App. 2002) (citing *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). Relevance is a question of what is helpful to the jury to determine the appropriate sentence for the particular defendant. *Rogers*, 991 S.W.2d at 265 (holding that prior convictions are relevant to the determination of the appropriate sentence). However, evidence that is relevant may be excluded if the danger of unfair prejudice substantially outweighs the probative value of the evidence. TEX. R. EVID. 403. "'Unfair prejudice' refers to an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Ex parte Lane*, 303 S.W.3d at 715 (quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)).

Here, there was no reasonable trial strategy for trial counsel not to object to the testimony of C.R. Although Applicant did not address this in his writ of habeas corpus, it is relevant to the determination of his case. In this case and the prior offense, Applicant

exhibited similar behavior, such as hiding in a restroom, wearing something covering his face, and failing to restrain his victims. Evidence of the prior conviction was relevant to help the jury assess the appropriate sentence.

On the other hand, the attack on C.R. was quite different, and as counsel said in closing argument, very ugly. The perpetrator forcibly entered a private residence, threatened to kill his victim, taped her body, raped her, poured bleach on her, and then attempted to steal money. Applicant did not engage in those sorts of actions during his multiple public restroom attacks, calling into question the probative value of the evidence.

Had counsel adequately investigated the sexual assault before trial, he would have had stronger grounds to request that the prejudicial testimony be excluded. Furthermore, C.R.'s testimony on the witness stand was likely particularly inflammatory to the jury. Clearly the danger of unfair prejudice substantially outweighed the probative value of the evidence.

***Punishment Phase Harm***

The determination of harm in the punishment context is difficult because of the scope of evidence that is allowed under Article 37.07, but appellate courts may grant relief where there is a reasonable probability that, but for trial counsel's errors, the sentencing jury would have reached a more favorable verdict. *See Ex parte Cash*, 178 S.W.3d at 819. This Court has assessed harm under *Strickland* in the punishment phase in two fairly recent cases.

In *Ex parte Cash*, we denied habeas corpus relief because we decided that there was no reasonable probability that the applicant's punishment would have been different but for the actions of his attorney. 178 S.W.3d at 818-19. The applicant's trial counsel filed an unsworn motion for probation, stating that the applicant was not a convicted felon. *Id.* at 817. Trial counsel requested a jury instruction on probation at the punishment phase, which the trial court denied because the applicant had a juvenile-delinquency adjudication, making him ineligible for parole. *Id.*[2] The basis of the applicant's application for a writ of habeas corpus was that his trial counsel was ineffective because he filed an unsworn motion for probation. *Id.* at 816. Because the jury sentenced the applicant to forty years, making him ineligible for probation,[3] we held that the applicant did not establish a reasonable probability that the outcome would have been different had trial counsel filed a sworn motion. *Id.* at 818-19.

On the other hand, in *Ex parte Lane*, we granted relief and ordered a new punishment hearing because of trial counsel's failure to object to testimony during the punishment stage. 303 S.W.3d 702, 719 (Tex. Crim. App. 2009). A DEA agent testified about the general dangers and societal costs caused by methamphetamine. *Id.* We determined that any probative value that the testimony had in assisting the jury in

---

[2] However, the juvenile-delinquency adjudication is a final felony conviction only for habitual-offender sentencing purposes and did not apply in this case. *Id.* at n.4.

[3] *See* TEX. CRIM. PROC. art. 42.12, § 4(d)(1) (a defendant is not eligible for community supervision (probation) if the defendant is sentenced to more than ten years' imprisonment).

determining the appropriate punishment was substantially outweighed by the danger of unfair prejudice. *Id.* at 714-15. The applicant was convicted of possession of methamphetamine and received a life sentence, which is the maximum sentence available for the offense. *Id.* at 706, 719. She argued that the facts of the case did not warrant a life sentence, but the trial court disagreed and found that the evidence against the applicant was overwhelming. *Id.* at 719. The trial court recommended that we deny relief. *Id.* at 706. Based on the errors of trial counsel, we held that the applicant demonstrated that there was a reasonable probability that the outcome of the punishment stage would have differed had counsel's performance not been deficient. *Id.* at 719-20.

The effects of trial counsel's deficiencies here are more in line with the facts of *Ex parte Lane* than *Ex parte Cash*. As in *Ex parte Lane*, it is apparent that the testimony of C.R. was highly prejudicial and should have been objected to by trial counsel. On the other hand, the instant case differs from *Ex parte Lane* in that Lane was given the maximum sentence for her crime, while Applicant was given only the high end of available punishment.

The reasoning of *Ex parte Cash* is less relevant because the applicant was not harmed by his counsel's deficiencies. Although probation was not an option given to the jury, the jurors sentenced the applicant to thirty years more than the maximum time allowed before probation can be given. Unlike that case, here, it would not be "pure conjecture and speculation" to find that the deficiencies of trial counsel influenced the

jury when it assessed Applicant thirty-five years more than the upper-end of punishment requested by defense counsel. *Ex parte Cash*, 178 S.W.3d at 818.

Here, counsel failed to adequately investigate Applicant's whereabouts during the attack, and apparently he was aware that Applicant had been excluded by DNA. Had he presented this evidence, the probative value of her testimony may not have been substantially outweighed by undue prejudice. There is a reasonable probability that the jury would have had reasonable doubt that Applicant committed the extraneous offense.

Given the emotional testimony by C.R. and the fact that counsel did not present evidence of Applicant's location or DNA exclusion, we find Applicant was prejudiced by the actions of his trial counsel.

## CONCLUSION

Applicant met his burden in satisfying the second prong of the *Strickland* test. The probability of prejudice here is sufficient to undermine our confidence in the outcome of the punishment phase. Because there is a reasonable probability that the punishment assessed would have been different had his trial counsel's performance not been deficient, we grant relief. We vacate Applicant's sentences so that the trial court may conduct new punishment proceedings.

Meyers, J.

Filed: June 27, 2012
Publish