**Affirmed and Memorandum Opinion filed July 18, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00147-CR

**RAUL ENCISO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1270756**

## M E M O R A N D U M    O P I N I O N

A jury found appellant, Raul Enciso, guilty of indecency with a child by sexual contact and assessed his punishment at eight years' incarceration. In a single issue on appeal, appellant claims he received ineffective assistance of counsel. We affirm.

### I. BACKGROUND

Appellant, who is the stepfather of the complainant, Sue, married Sue's mother

when Sue was three years old.[1]  Appellant started touching Sue when she was six or seven years old.  The first time appellant touched Sue was when appellant was at home with Sue when she was sick.  Sue woke up because she felt appellant touching her legs.  Sue pretended to be asleep because she was scared.

The abuse continued.  When Sue was watching television in Mother and appellant's bedroom, appellant would come in and lie down next to her.  Sometimes appellant would touch her vagina through her clothes.  Other times, at appellant's instruction, Sue took off her jeans and lowered her underwear to her knees.  Sue removed her clothes because she was afraid appellant would hit her.  Appellant would rub the outside and inside of her vagina with his fingers and then put his penis in her vagina.  Appellant would be breathing hard, and sperm would come out of his penis.  Appellant also put his penis in Sue's mouth.  Sue watched television in Mother and appellant's bedroom because she did not want to watch television with her sisters, and there were times when appellant did not abuse her.  Appellant's sexual abuse of Sue occurred mostly at home when no one was around or paying attention.

Although most of the sexual abuse occurred at home, some of the abuse occurred in appellant's car.  One incident occurred in the car when appellant and Sue went shopping at Wal-Mart.  After they had finished shopping, appellant and Sue returned to the car where appellant started to "[f]eel on [her] legs," touched her vagina through her clothes, and pulled her head down and put his penis in her mouth.  Sue went places with appellant voluntarily because there were times when appellant did not abuse her.

The last occasion that appellant touched Sue was in the car after appellant, Sue, and Sue's sister had their photograph taken at Kroger.  Sue's sisters were in the back, and appellant started touching her legs.

---

[1] To protect the identity of the complainant in this case, we use pseudonyms for the complainant and certain other persons involved.

2

Appellant's sexual abuse of Sue ended when she was twelve years old. When Sue disclosed the abuse, it was about a year after the last incident, and Mother and appellant had separated. Sue initially disclosed the abuse to a fifteen year old friend who had been sexually abused. Sue's friend encouraged her to tell Mother. Sue finally disclosed the abuse to Mother when she heard Sue tell her sister during a fight that she hated appellant, who was her sister's father. At first, Mother did not believe Sue, but Sue persisted in telling Mother until Mother believed her. Sue had not told Mother about the abuse before because appellant had told Sue that she "was going to jail with him" if she said anything, and she was afraid that Mother would not believe her.

On April 22, 2010, Sue had a physical exam at the Children's Assessment Center (CAC), the results of which were "normal," which "neither rules out nor confirms sexual activity." Dr. Michelle Lyn, who performed the physical exam, did not test for D.N.A. "because it would be almost impossible to have any D.N.A. a year later." Lyn was not surprised that Sue waited so long to disclose the sexual abuse because the majority of the cases are "delayed outcries." Lyn wrote down what Sue told her about the history of the abuse. There was nothing in Sue's history about appellant's having penetrated her vagina with his fingers or having penetrated her mouth with his penis.

Tasha Rogers-James, the forensic interviewer at the CAC who conducted Sue's interview, described Sue's answers as "[s]hort, minimizing, flat." Roger-James explained that Sue's answers were short with respect to certain details, she minimized the events, and showed no emotion. Rogers-James stated that it is not unusual for a child, during a forensic interview, to not give all the details about the abuse, but to provide additional details later.

Dr. Danielle Madera, a psychologist at the CAC who had no contact with Sue and was testifying as an expert, stated that delayed outcry occurs more often than not. Madera explained that a child may wait to disclose sexual abuse because of threats by

3

the perpetrator or the child does not think he or she will be believed. It is not unusual for the perpetrator to start the abuse by touching the child through the clothes and progressing to more serious sexual abuse. A perpetrator may single out a child who is neglected or has been known to lie. In her experience, Madera stated that children who usually lie about abuse have been coached by a parent involved in a custody dispute.

Sue testified that she told the prosecutor about appellant's putting his penis in her mouth and his fingers inside her vagina, even though she had not told anyone else. On cross-examination, Sue admitted that when she was younger, she lied to Mother by saying that her brother, John, had hit her when he had not "because he would get mad at me and I wanted him to get in trouble."

Deputy F.J. Garcia of the Harris County Sheriff's Department testified that the only evidence of sexual abuse was Sue's say-so, and it was possible that she had lied to him. In his own testimony, appellant denied touching Sue inappropriately or sexually assaulting her.

Appellant was charged with aggravated sexual assault and indecency with a child by sexual contact. The jury acquitted appellant of aggravated sexual assault, but found him guilty of indecency with a child by sexual contact and assessed punishment at eight years' in prison. Appellant filed a motion for new trial alleging ineffective assistance if counsel. After conducting a hearing, the trial court denied appellant's motion. This appeal followed.

## II. INEFFECTIVE ASSISTANCE COUNSEL

In his sole issue on appeal, appellant claims that the trial court abused its discretion by denying his motion for new trial based on ineffective assistance of counsel.

When a defendant raises the issue of ineffective assistance of counsel in a motion

in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion. *Rodriguez v. State*, 329 S.W.3d 74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We review the evidence in the light most favorable to the trial court's ruling, and we will reverse only if no reasonable view of the record could support the trial court's ruling. *Id.*

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.051 (West Supp. 2012). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, the defendant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) there is a reasonable probability, sufficient to undermine the confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The defendant must prove ineffectiveness by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *see also Ex parte Rogers*, 369 S.W.3d 858, 862 (Tex. Crim. App. 2012) ("Because there are countless ways to provide effective assistance of counsel, judicial scrutiny of trial counsel's conduct must be highly deferential." (internal quotations and citations omitted)).

Counsel has a duty to make an independent investigation into the facts of the case. *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996), *overruled on*

5

*other grounds by Mosley v. State*, 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998)). This duty to investigate is not categorical. *Id.* Counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary. *Id.* Where there is only one plausible line of defense, counsel must conduct a "reasonably substantial investigation" into that line of defense because there can be no strategic choice that renders such an investigation unnecessary. *Joseph v. State*, 367 S.W.3d 741, 744 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Strickland*, 466 U.S. at 680). The reasonableness of counsel's investigation may turn on information supplied to him by the defendant. *Id.* When a defendant gives counsel reason to believe that pursuing a certain investigation would be harmful, counsel's failure to pursue such investigation may not be deemed unreasonable. *Id.*

The decision to call a witness is generally a matter of trial strategy. *State v. Thomas*, 768 S.W.2d 335, 337 (Tex. App.—Houston [14th Dist.] 1989, no pet.). A counsel's failure to call witnesses is irrelevant absent a showing that such witnesses were available and that appellant could benefit from their testimony. *See Perez*, 310 S.W.3d at 894. Counsel's decision not to pursue a defense or to call a witness is not insulated from review, but unless a defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel will generally not be found ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).

Appellant filed a motion for new trial complaining that he had received ineffective assistance of counsel at trial. Specifically, appellant alleged that his trial counsel, Mario Caballero failed to (1) consult adequately with appellant; (2) perform an independent investigation of facts relevant to the defense; and (3) interview relevant witnesses, namely John and Mother, whose names were provided to Caballero by appellant. On April 26, 2012, the trial court held a hearing on appellant's motion for new trial, at which appellant, appellant's brother, and Caballero testified.

On direct examination, appellant asserted that the testimony of John and Mother would have shown "who's lying in this case" and "the truth about this case." Appellant believed that the testimony of John and Mother would have helped show that he was not guilty, and the outcome of his case would have been different.

When questioned on cross-examination, appellant stated that he told Caballero that there was incest between John and Mother, and he wanted Caballero to investigate the alleged incest. Appellant acknowledged that he did not know which side John's and Mother's testimony would help—the State or the defense. Appellant further admitted that he wanted John and Mother to testify to show their bad conduct or dishonesty. Appellant further admitted that he met with Caballero six times.

Appellant's brother, Tom, was a character witness at appellant's trial. Tom testified at the hearing that Caballero told Tom what he was going to ask, but did not explain to him the facts of appellant's defense. Tom did not know of any investigation of facts by Caballero through the members of appellant's family. Tom stated that Caballero did not call family members, who had knowledge of the facts of this case, to testify. According to Tom, his wife knew about the facts of the case and would have been available to testify had Caballero called her to the stand.

Caballero testified that, when appellant first came to him, appellant said Mother "was interested [in] getting immigration benefits from the accusation." In other words, Sue was motivated to allege sexual abuse because she could become a permanent resident if appellant were found guilty.

In a subsequent meeting, appellant told Caballero that "he had found the mother and her son having sex in bed with lotions." Appellant also told Caballero that he thought Mother "had sex with her brother and had — the result of that sex was the birth of [John]. [Appellant] thought that [John] was an offspring of [Mother] and her brother." Caballero chose not to present this "defense" because it "came across like

7

mud slinging [sic]" or retaliation, and "that [appellant] would have problems with his credibility." Caballero also thought "it was irrelevant," and he made "the judgment call not to present that defense because . . . it would damage [appellant] more than help him." Caballero's strategy was to not have Mother testify because she was a "hostile witness" and would only corroborate Sue's testimony, and to try to impeach Sue's testimony because "the only evidence they had was [Sue's] testimony." To the extent that the jury found appellant not guilty of the aggravated sexual assault charge, Caballero believed his strategy worked.

Caballero felt that John was probably the "worst witness" because the police report stated that John claimed to have seen appellant coming out of the bedroom, and Sue inside the bedroom, looking upset. Caballero explained "that was actually as close as any . . . eyewitness that there was. . . . I didn't want him on the stand."

In light of appellant's "outlandish" accusations, Caballero did not believe that interviewing or calling John or Mother would have helped, but instead, would have only hurt appellant's case, with the jury potentially finding appellant guilty of aggravated sexual assault and assessing a more severe punishment.[2] Caballero relied on his review of the offense report to assess the validity of the strategy of not calling John and Mother. Caballero explained that "[w]e do judgment calls in these cases, and I felt that I made a reasonable judgment on those issues." Therefore, Caballero only pursued "the immigration benefits' defense" because it "was logical."

Caballero filed a notice of intent to use the expert testimony of "Attorney Lawrence E. Rushton to testify about immigration law in regards to children who are

---

[2] Aggravated sexual assault is a first degree felony with a punishment range of five to ninety-nine years or life in prison and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (West 2011), § 22.021(e) (West Supp. 2012). Indecency with a child by sexual contact is a second degree felony with a punishment range of two to twenty years in prison and a fine not to exceed $10,000. TEX. PENAL CODE ANN. §§ 12.33, 21.11(d) (West 2011).

victims of sexual abuse by a stepparent." During trial, Caballero requested the court to allow him to present expert witness testimony regarding immigration law and the possibility of Sue becoming a permanent resident, and to question Sue about her immigration status. The trial court denied the motion because appellant did not have direct proof that Sue told someone that she had fabricated the sexual abuse allegations.[3]

Caballero also discussed with appellant the State's plea offer. Appellant was indicted for indecency with a child in two cause numbers, 7270755 and 7270756. The State offered a plea bargain of seven years' deferred adjudication early on in the case. Six days before the arraignment, the State reindicted the charge of indecency with a child in cause no. 7270755 to aggravated sexual assault in cause no. 1336079, based on new information from Sue, and dismissed cause no. 1270755. At the arraignment, the prosecutor stated that she had offered appellant seven years' deferred adjudication and, "if he wanted to take it[,] today would be the last day to take it. After that, it's going to go up to a prison TDC recommendation based on new information provided by the Complainant." Appellant rejected the State's plea offer.

With regard to the plea offer, Caballero advised appellant about the law, his rights, and the range of punishment. Caballero discussed the plea offer with appellant "many times over." Caballero explained that "[i]t was important for [appellant] to understand what the possibility was if he didn't plea bargain, in case he took it to trial. He was very adamant about his not guilty view."

Caballero testified that he met with appellant at least six times to discuss the case and ascertain the facts of the case and what defenses appellant proposed. Appellant did not always show up for his meetings with Caballero. Caballero obtained a copy of the

---

[3] Nonetheless, Caballero asked Sue: "Are you aware that you are not in this Country legally?" The trial court sustained the State's relevancy objection, stating "We talked about that earlier, Mr. Caballero. Don't make me hold you in contempt. Move on." The trial court then instructed the jury to "[d]isregard that last question and answer. Don't consider it for any purpose."

offense report and read it "many times over"; viewed Sue's recorded interview; and reviewed the district attorney's file, taking notes of its contents.

Caballero also obtained a discovery order; filed a written objection to the use of a child abuse victim's hearsay statement; filed a motion to order the district attorney to deliver a copy of Sue's taped interview, set the motion for a hearing, and raised the issue after voir dire; filed a notice of intent to use expert witness testimony regarding the "immigration benefits' defense" and requested permission from the court during trial to present the expert witness; filed a motion to transfer bond; and provided appellant with affidavits so that he could obtain admissible evidence.

Moreover, Caballero researched the law regarding taped testimony in cases involving minors; researched the law regarding voir dire and prepared questions for the voir dire panel; prepared about sixty questions each for appellant and Sue, which did not include follow-up questions; prepared questions for the police and the expert witnesses; and subpoenaed appellant's employment records and former employer.

At trial, Caballero thoroughly questioned the voir dire panel, with the trial court granting at least two challenges for cause. Caballero also cross-examined all of the State's witnesses and called appellant's brother and former supervisor to testify. During his closing statement, Caballero questioned Sue's credibility by pointing out that Sue was inconsistent because she did not tell the police or Dr. Lyn that appellant had penetrated her vagina with his finger and penetrated her mouth with his penis. Caballero further questioned Sue's motives for alleging sexual abuse by appellant.

On appeal, appellant argues that John and Mother were available to testify and had facts relevant to his defense. Appellant further contends that, as family members, John and Mother, "were obviously acquainted with events in the household. As persons with firsthand knowledge[,] their testimony could well have led to a different outcome" because the case lacked physical evidence and rested on Sue's credibility. Appellant

10

also asserts that his brother's testimony that other family members were available to testify in appellant's defense, but Caballero failed to interview or call them, supports his claim of ineffective assistance of counsel.

At the hearing on his motion for new trial, appellant only cryptically stated that John's and Mother's testimony would show who was lying without explaining what he meant by that. He also stated in conclusory fashion that their testimony would have meant a different outcome in this case. However, it was during cross-examination that appellant's allegation of incest between John and Mother first came out. Appellant did not mention the alleged incest in his motion for new trial. Caballero testified that he believed the incest defense was irrelevant and nothing more than mudslinging or retaliation, appellant's credibility would suffer if he pursued that defense, and it would only hurt appellant's case such that the jury might have found him guilty of aggravated sexual assault or have assessed a more severe punishment. Appellant gave Caballero reason to believe that pursuing an investigation of the alleged incest would be harmful to his case. *See Joseph*, 367 S.W.3d at 744 ("When a defendant gives counsel reason to believe that pursuing certain investigations may be harmful, counsel's failure to pursue such investigations may not be deemed unreasonable.").

Caballero also explained that he did not want to call Mother to the stand because he considered her to be a hostile witness, who would only corroborate Sue's testimony. Likewise, Caballero did not want John to testify because, after reviewing the police report, he felt that John was essentially an eyewitness. Therefore, using his judgment, Caballero decided not to pursue that course, but instead pursue the "immigration benefits defense." Here, appellant has not overcome the presumption that Caballero's decision not to call John and Mother to testify was based in sound trial strategy. *See Ex parte Flores*, 387 S.W.3d at 633 (explaining that, unless a defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel will

11

generally not be found ineffective).

Moreover, appellant admitted that he wanted Caballero to call John and Mother to testify so that they could be impeached for their alleged behavior and dishonesty. Appellant has not explained how John's and Mother's testimony about alleged incest would help his case. Indeed, appellant admitted that he did not know if their testimony would benefit his case or the State's case. *See Perez*, 310 S.W.3d at 894 (explaining that failure to call witnesses is irrelevant absent a showing that the witnesses were available and that the appellant would benefit from their testimony). With respect to Tom's testimony, he only identified his wife as a family member who had facts of the case but was not called to testify. Tom did not explain what facts his wife knew or how her testimony would benefit appellant's case. *See id.*

With respect to appellant's claim that Caballero did not consult adequately with him, the evidence detailed above refutes that claim. Caballero met with appellant six times to discuss the case—a fact that appellant confirmed. Caballero also discussed the State's plea offer with appellant "many times over."

In summary, we cannot say that Caballero's decision not to call John and Mother was not based on reasoned trial strategy. Nor can we conclude that Caballero did not adequately consult with appellant. Therefore, appellant has failed to prove that counsel's performance was deficient. Because appellant has not satisfied the first prong, we need not address whether appellant has shown prejudice. Having reviewed the evidence in the light most favorable to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying appellant's motion for new trial. *See Rodriguez*, 329 S.W.3d at 81.

We overrule appellant's sole issue.

## III. CONCLUSION

Having overruled appellant sole issue on appeal, we affirm the trial court's judgment.

/s/    Sharon McCally
           Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).