

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00130-CR

**EX PARTE** Christopher O. **WOODRUFF**

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2007CR11181-W1
Honorable Sid L. Harle, Judge Presiding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Karen Angelini, Justice
               Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  August 28, 2013

AFFIRMED

Christopher Woodruff appeals the trial court's order denying his application for writ of

habeas corpus.  In his application for the writ and supporting brief, he alleges ineffective assistance

of counsel during his trial before the court.  We affirm the trial court's judgment.

## BACKGROUND

On November 4, 2009, Woodruff entered a plea of not guilty to the felony offense of

recklessly causing injury to his seventy-three year old father, Charles Woodruff[2] by pushing him.

Woodruff waived a jury and elected a trial before the court.  At trial, Charles testified that

Woodruff pushed him out of the house where Woodruff resided with his mother.  Woodruff

---

[1] The Honorable Sid L. Harle presided over the trial on the merits.  The Honorable Andrew W. Carruthers, Bexar County Magistrate Judge, presided over the post-conviction habeas corpus proceeding.
[2] For purposes of clarity, Charles Woodruff will be referred to as "Charles" in this opinion.

testified that he lived in the house with his mother, who suffered from dementia. Woodruff claims that Charles was the aggressor and fell out the door, injuring himself, when Woodruff was defending himself.

The trial court found Woodruff guilty and assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of ten years, suspended and probated for a term of ten years. This court affirmed the trial court's judgment and the Texas Court of Criminal Appeals denied Woodruff's Petition for Discretionary Review.

Woodruff subsequently filed an Application for Writ of Habeas Corpus seeking to have his conviction set aside based on ineffective assistance of counsel. A hearing was held on July 16, 2012, and on August 30, 2012. The trial court denied the application and this habeas proceeding ensued.

## STANDARD OF REVIEW

An applicant for habeas corpus relief "must prove his claim by a preponderance of the evidence." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Scott*, 190 S.W.3d 672, 673 (Tex. Crim. App. 2006) (per curiam). In reviewing the trial court's order denying habeas corpus relief, we "must view the record evidence in the light most favorable to the trial court's ruling." *See Kniatt*, 206 S.W.3d at 664. We will uphold the trial court's ruling absent an abuse of discretion. *Id.* "In conducting our review, we afford almost total deference to the [trial court's] determination of the historical facts that are supported by the record, especially [those] based on an evaluation of credibility and demeanor." *Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.); *accord Ex parte Nagle*, 48 S.W.3d 213, 215 (Tex. App.—San Antonio 2000, no pet.). We afford that same deference to the trial court's application of the law to the facts if the ultimate questions turn on an evaluation of credibility and demeanor. *Ex parte Wilson*, 171 S.W.3d at 928.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

To obtain habeas corpus relief on the ground of ineffective assistance of counsel, the defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "that *but for* [the deficiency, there is a reasonable probability] the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984) (emphasis added); *accord Ex parte Martinez*, 330 S.W.3d 891, 900–01 (Tex. Crim. App. 2011). A simple showing that trial counsel's "errors had some conceivable effect on the outcome of the proceeding" is not enough to meet the *Strickland* standard. *Strickland*, 466 U.S. at 693; *accord Ex Parte Rogers*, 369 S.W.3d 858, 862–63 (Tex. Crim. App. 2012).

The defendant bears the burden of proving counsel was ineffective by a preponderance of the evidence. *Ex parte Martinez*, 330 S.W.3d at 901; *see Ex parte Rogers*, 369 S.W.3d at 862. "Because there are countless ways to provide effective assistance in any given case, [we] must be highly deferential and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ex parte Martinez*, 330 S.W.3d at 900 (quoting *Strickland*, 466 U.S. at 689). "Allegations of ineffectiveness must be based on the record and the presumption of a sound trial strategy cannot be overcome, absent evidence in the record of the attorney's reasons for his conduct." *Id.* at 901. When possible, trial counsel should be given an opportunity to explain the challenged actions or failures before being denounced as ineffective. *See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

Furthermore, to support an allegation of ineffective assistance of counsel, the record must affirmatively demonstrate the alleged ineffectiveness. *See Menefield*, 363 S.W.3d at 592–93; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Without affirmative evidence of

counsel's thought processes, we will presume sound trial strategy, and we will not conclude counsel's performance was deficient "unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *accord Lopez*, 343 S.W.3d at 142.

### A. Failure to Present Evidence of the Crime Scene

Woodruff first argues his trial counsel failed to present a video recording of the crime scene supporting his assertions that Charles hit his head on a piece of ironwork and not the sidewalk as he testified at trial. Woodruff acknowledges his trial counsel introduced a "handful of still photographs" of the ironwork in question, but avers that the video recording would have somehow forced Charles "to admit the protruding metal caused the accident." Yet, a review of the record reveals that trial counsel not only introduced the pictures of the metal framework in question, but he also extensively cross-examined Charles regarding specifically how he fell and the nature of his injury, i.e., that the ironwork matched the shape of the injury on Charles's forehead. Because counsel questioned Charles in great detail about the ironwork and his injuries, and the photographs admitted at trial clearly show the ironwork in question, the record fails to demonstrate that counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (requiring the defendant to prove objectively, by a preponderance of the evidence, that his counsel's representation fell below professional standards).

### B. Failure to Call Character Witnesses

Woodruff next contends that trial counsel's failure to call witnesses to testify regarding Charles's abusive nature toward Woodruff constituted ineffective assistance. More specifically, Woodruff claims that he "was attempting to put an end to any further altercation by asking the father to leave without any violence . . . [which] is what preceded the accuser's accidental fall and

the injury which was caused by the ironwork." In order to show that counsel was ineffective for failure to call witnesses, the evidence must show that the witnesses were available and the defendant would benefit from their testimony. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Vasquez v. State*, 2 S.W.3d 355, 361 (Tex. App.—San Antonio 1999, pet. ref'd). We are also mindful of the Court of Criminal Appeals' recitation that "character witnesses generally play a very small role in deciding the main issues at trial." *Ex parte Miller*, 330 S.W.3d 610, 621–22 (Tex. Crim. App. 2009).

During his habeas hearing, Woodruff offered his testimony and that of his friend, Lynda James. Although in New York on the day in question, Lynda testified that she was on the phone with Woodruff when she heard Charles "threaten to shoot [Woodruff] and kill him." Lynda further acknowledged that although she was concerned for Woodruff's safety, she did not contact the San Antonio Police Department. Lynda also testified that she wrote a letter regarding the incident, but acknowledged that she could not be certain whether the letter was sent to trial counsel or to Woodruff, or whether trial counsel even actually received the letter.

Woodruff testified that he told his attorney about the long history of abuse. Woodruff acknowledged that Charles's propensity for violence and the threats he made toward Woodruff were placed into evidence during Charles's cross-examination before the trial court. Woodruff also recognized that the fact that Lynda overheard these threats was offered into evidence by his trial counsel.

Because Woodruff's trial counsel elicited the same or similar testimony that Woodruff now complains was omitted, Woodruff wholly failed to carry his burden of proof in showing that the failure to produce the character testimony in question was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *See Strickland*, 466 U.S. at 687. Moreover, because the record contains no evidence of how Woodruff would have benefitted from Lynda's testimony,

Woodruff has failed to meet his burden to show that his counsel's assistance was ineffective. *See Ex parte Martinez*, 330 S.W.3d at 901.

## C.      Presumption of Sound Trial Strategy

The trial court record and the habeas record do not support Woodruff's conclusion that his counsel's conduct was not sound trial strategy. Woodruff's trial counsel did not testify during the habeas hearing and the record is silent with regard to the rationale behind trial counsel's decision not to pursue either the video or to call Lynda as a witness. Without a record, Woodruff failed to provide his trial attorney with an opportunity to explain his trial strategy. *See Menefield*, 363 S.W.3d at 593 ("Trial counsel 'should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.'" (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005))). We conclude that Woodruff failed to prove by a preponderance of the evidence that his trial counsel was constitutionally deficient and that there is a reasonable probability that, but for counsel's unprofessional errors, Woodruff would likely have been found not guilty. *See Strickland*, 466 U.S. at 687; *Bone*, 77 S.W.3d at 836.

## CONCLUSION

The record is silent as to counsel's strategy or reasoning related to his failure to present the video of the crime scene and whether Woodruff's friend, Lynda James, should have been called to testify. Additionally, Woodruff's evidence fails to show that this is one of those extraordinary situations in which the face of the record shows counsel's challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Garcia*, 57 S.W.3d at 440. Woodruff failed to satisfy *Strickland*'s first prong that counsel's performance was deficient. *See Lopez*, 343 S.W.3d at 144. Furthermore, because we indulge a strong presumption that counsel's conduct is within the wide range of reasonable professional assistance, Woodruff failed to overcome the presumption that counsel's actions was not based on sound trial strategy. *See id.* at 142. We,

therefore, conclude the trial court did not abuse its discretion by denying Woodruff's application for writ of habeas corpus.

Patricia O. Alvarez, Justice

DO NOT PUBLISH