

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0287-20

### HAPPY TRAN PHAM, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

KELLER, P.J., delivered the opinion of the Court in which HERVEY, YEARY, NEWELL, KEEL and McCLURE, JJ., joined. YEARY, J., filed a concurring opinion. SLAUGHTER, J., filed a concurring opinion in which RICHARDSON and WALKER, JJ., joined.

Before us are two distinct issues, one at the guilt stage and one at the punishment stage. The guilt stage issue is whether Appellant was entitled to a "threat of deadly force" instruction under Penal Code section 9.04. We conclude that he was not entitled to such an instruction because, by shooting the victim, he acted contrary to the statute's requirement that his purpose in threatening deadly force be "limited to creating an apprehension that he will use deadly force if necessary." The punishment stage issue is whether trial counsel was ineffective for failing to call punishment stage

witnesses to give positive character testimony about Appellant. We conclude that prejudice has not been established because Appellant's status as a fugitive and drug dealer made the proposed positive character testimony by these witnesses problematic. A positive character assessment by a witness who was ignorant of Appellant's status and activities would likely be seen as stale or uninformed, while a positive character assessment by a witness who was aware of these things would likely be discounted as valueless because the witness was not a good judge of character. In addition, cross-examination of the latter type of witness would likely have resulted in eliciting more bad-character evidence about Appellant. Concluding that Appellant's guilt and punishment stage contentions are without merit, we affirm the judgment of the court of appeals.

## I. BACKGROUND

### A. The Incident and Appellant's Flight

Appellant shot and killed Pierre Mai. He claimed that he shot Mai in self-defense because he perceived that Mai was reaching for his waistband toward his own weapon. Appellant and Mai had dated the same woman, and for this, or possibly other reasons, they had an antagonistic relationship with each other. On the evening of the killing, Appellant went to a restaurant to join his cousin's family for dinner. Before arriving, Appellant received a text message from his cousin's wife that Mai was at the restaurant. The restaurant's security video for that evening showed that Appellant entered, first looked in the direction of his cousin's family, but then pulled a gun out of his waistband and walked up to Mai's table, which was off-camera. While on camera, Appellant carried his gun by his side and did not point it at anyone.

Appellant testified that he noticed a commotion in the direction of Mai's table and perceived Mai to be reaching toward his waistband. Knowing Mai to carry a gun, Appellant drew his own

weapon. Appellant claimed that he did so only as a warning to Mai, in an effort to de-escalate the situation, but as he approached Mai's table, he saw Mai fumble to extract his own gun and begin to point it at Appellant. Appellant claimed that he then shot Mai twice, aiming low because he did not intend to kill him. According to Appellant, he shot Mai the second time because Mai had begun to raise his own gun as he was falling backward from the first shot.

Mai's gun was found next to his body on the restaurant floor. Appellant fled the scene, and he successfully evaded apprehension for the next ten years. During that time, he sold marijuana to make money.

## B. Trial and Motion for New Trial

At the guilt stage of trial, the trial judge instructed the jury on the law of self-defense but refused Appellant's request to include an instruction on the law of threats as justifiable force, under Section 9.04. The jury found Appellant guilty of murder. During the punishment stage of trial, defense counsel called only two witnesses—Appellant's older brothers—who testified that they thought Appellant would do well with a probated sentence. In closing argument, counsel argued that Appellant did not pose a danger of future violence:

> I would submit to you that in this case, Happy Pham is someone that you should not be afraid of. This was a very specific conflict with a very specific person that happened over a decade ago. The State has not introduced any evidence that Happy Pham has been a physical threat to anyone since that point. And while I understand that you're mad at him for putting himself in this position and not turn around and not leaving that establishment, there just isn't evidence that would justify a finding that he is a threat to society.

Counsel also pointed out that Appellant did not have a prior felony conviction. The jury imposed a life sentence.

In a motion for new trial, Appellant alleged that his trial attorney was ineffective for failing

to prepare his brothers to testify and for failing to present other witnesses at the punishment stage. In an affidavit, the trial attorney stated that he believed there was a strong likelihood that Appellant would be acquitted on the basis of self-defense. The trial attorney noted that challenges would come with presenting "positive" witnesses at the punishment stage, given that they would almost certainly fall within two categories. The first category of witnesses would be aware that Appellant had been hiding from law enforcement for a decade and was selling marijuana throughout that period. The second category of witnesses would have been unaware of this activity because they had not had contact with Appellant for the decade preceding trial. Defense counsel further stated:

> I made a conclusory assumption that Happy Pham's friends and family who stayed in contact with him during the time he was hiding and selling marijuana would not have made good punishment witnesses because they would have been exposed to damaging cross-examination about their knowledge of Mr. Pham's activities during the time period of their relationships with him. As a result of my assumption to this effect, combined, with my belief that the self-defense issues would sufficiently mitigate Mr. Pham's sentence if there was one, I made no effort to further investigate the possibility that punishment witnesses existed who could provide "net positive" punishment testimony on Mr. Pham's behalf. My failure to investigate the possibility that favorable punishment witnesses existed was not based on any trial strategy. During the punishment phase of trial, I offered the testimony of two of Happy Pham's brothers, Long Pham and Dung Pham. I met with both witnesses prior to their testimonies, but my decision to offer their testimonies at the punishment phase was rushed and no in-depth preparation had been conducted.

Also attached to the motion for new trial were twenty affidavits from individuals who could have been called as witnesses during the punishment phase of trial. These affidavits talked about positive character traits possessed by Appellant. In general, the affidavits stated that Appellant is a good individual who is friendly and kind, not known by the affiants to be violent or aggressive, and not a danger to the public. Many of the affidavits stated that the affiant would have asked for leniency on Appellant's behalf, and some affidavits from family members talked about the effect of

Appellant's prosecution on them.

The trial court denied the motion for new trial.

### C. Appeal

The court of appeals affirmed the trial court's judgement.[1]  We limit our discussion of its opinion to the claims before us on discretionary review.

### 1. *Instruction on Threat of Deadly Force*

One of Appellant's claims on appeal was that the trial court should have submitted his requested instruction on the threat of deadly force under Penal Code section 9.04.  The court of appeals recited Section 9.04, which states that, under certain circumstances, the threat of deadly force does not constitute the use of deadly force.[2]  The court extensively discussed our prior case of *Gamino v. State*,[3] which construed the statute.[4]  The court observed that *Gamino* found Section 9.04 to be part of the law of self-defense and not a "third variety" of self-defense.[5]  The court concluded that Section 9.04 applies only when "deadly force" was not used,[6] and that it did not apply in Appellant's case because he used deadly force rather than merely threatening deadly force.[7]

### 2. *Failure to Present Mitigating Witnesses*

---

[1]  *Pham v. State*, 595 S.W.3d 769, 789 (Tex. App.—Houston [14th Dist.] 2019).

[2]  *See id.* at 778 (quoting the statute).

[3]  537 S.W.3d 507 (Tex. Crim. App. 2017).

[4]  *Pham*, 595 S.W.3d at 778-79.

[5]  *Id.* at 778.

[6]  *Id.*

[7]  *Id.* at 779.

One of Appellant's other claims on appeal was that counsel was ineffective for failing to present mitigating evidence at the punishment stage of trial. The court of appeals concluded that Appellant's trial attorney did not perform deficiently, despite the attorney's profession otherwise.[8] The appellate court found that the trial attorney's strategy was reasonable in light of the dilemma created by Appellant's ten year evasion of the police and his life as a drug dealer.[9] According to the court of appeals, "trial counsel faced the dilemma of calling friends and family to testify at the punishment phase when the witnesses either had no contact with appellant for the past ten years, possibly rendering any opinions of appellant's character stale, or possibly had knowledge of or were complicit in appellant's evading capture or had knowledge of appellant's drug-dealing, which could have resulted in unfavorable or detrimental testimony at trial."[10] The court of appeals also concluded that "[p]rioritizing appellant's self-defense claim over the presentation of mitigation witnesses that had no knowledge of appellant's current character, or possibly had knowledge of appellant's drug-dealing activities, or possibly had helped appellant elude capture, is a reasonable strategic decision."[11]

---

[8] *Id.* at 782.

[9] *Id.*

[10] *Id.* The court of appeals concluded that the trial court essentially stated this conclusion in its oral findings. *Id.* That is perhaps an overstatement, but the trial court did say that "some family members had assisted the defendant in fleeing" and so calling them would be "risky" and that the witnesses' testimony "would have been of limited value just because they hadn't seen him in 10 years." The trial court noted that Appellant had been underground for 10 years and had no social security card and no driver's license and that there was no record of him anywhere until he was caught with marijuana.

[11] *Id.* at 782-83.

The court of appeals also concluded that Appellant failed to establish prejudice.[12] The appellate court explained that establishing prejudice required showing a reasonable probability that, but for the attorney's errors, "the sentencing jury would have reach a more favorable verdict."[13] The court further explained that this showing was more than simply showing that the attorney's errors "had some conceivable effect on the outcome of the punishment assessed."[14] In its earlier recitation of Appellant's proffered mitigating evidence, the court of appeals had observed that none of the affidavits reflected that any of the individuals identified as potential punishment-stage witnesses, except for Appellant's girlfriend, had any contact with Appellant in the ten years since the victim's death.[15] Referring to its discussion under the deficient performance prong, the court of appeals stated that the evidence that would have mitigated Appellant's punishment "came from either witnesses that had not had any contact with appellant in ten years, had assisted appellant in leaving the state after the shooting, or were aware of his drug-dealing activities."[16] "In light of the testimony and video evidence, which convinced the jury that appellant did not act in self-defense," the court of appeals determined that it could not conclude that there was a reasonable probability that the jury would have reached a more favorable verdict but for the attorney's alleged errors.[17]

## II. ANALYSIS

---

[12] *Id.* at 783.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 782.

[16] *Id.* at 783

[17] *Id.*

## A. Instruction on Threat of Deadly Force

Penal Code section 9.04 provides:

> For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.[18]

In *Gamino*, we explained that this statute does not provide a separate defense but allows a defendant who meets its terms to satisfy the self-defense requirements under Penal Code section 9.31, relating to *non-deadly force* used in self-defense, rather than having to satisfy the onerous self-defense requirements under Penal Code section 9.32, relating to *deadly force* used in self-defense.[19] Put succinctly, if Appellant's threat of deadly force complied with Section 9.04, then it constituted the use of non-deadly force rather than the use of deadly force, and the use of non-deadly force is easier to justify than the use of deadly force.

Section 9.04 comes with an express limitation. It applies only when "the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary." Here, Appellant's purpose was not so limited because he actually shot Mai and intended to do so. Appellant did not merely intend to create an apprehension in Mai that Appellant would shoot him if necessary. If Appellant harbored that purpose at one time, he went beyond it when he shot Mai with the purpose of injuring him—an actual use of deadly force rather than the creation of a mere apprehension of the use of deadly force. Under those circumstances, Appellant was not entitled to an instruction under

---

[18] TEX. PENAL CODE § 9.04.

[19] 537 S.W.3d at 510-11.

Section 9.04.[20]

## B. Failure to Present Mitigating Witnesses

For a defendant to prevail on an ineffective assistance claim, the record must show deficient performance by counsel and prejudice.[21] Assuming for the sake of discussion that counsel performed deficiently, we conclude that prejudice has not been shown.

The court of appeals accurately recited the standard for showing prejudice from punishment-stage errors: "a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable verdict."[22] And that court was correct to also say that it was not enough to show the punishment-stage errors "had some conceivable effect on the outcome of the punishment assessed."[23] Further, we conclude that the court of appeals accurately assessed the dilemma that trial counsel faced with respect to punishment mitigating witnesses. If a witness had not had contact with Appellant during the ten years in which he was a fugitive, then that witness's testimony was likely to be viewed by a jury as stale and uninformed. If a witness did have contact with Appellant while he was a fugitive for ten years, then a jury was likely to view that witness as a bad judge of character. And the latter type of witness would give damaging testimony during cross-examination because the

---

[20] We need not and do not address whether something short of the facts before us would take a defendant's case outside the ambit of § 9.04. We need not decide, for example, whether merely firing a gun would be sufficient to constitute more than the creation of the apprehension that deadly force would be used if necessary. By his own admission, Appellant fired the gun intending to hit Mai, and the evidence is undisputed that Mai was actually shot. Whether lesser scenarios would fall outside the ambit of § 9.04 is a question for another day.

[21] *Ex parte Garza*, 620 S.W.3d 801, 808 (Tex. Crim. App. 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[22] *Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012).

[23] *See id.*

witness would at least know about Appellant's fugitive status and would likely also know about other bad acts committed by Appellant while on the run from the law. Moreover, witnesses who had assisted Appellant's initial flight but had not had contact with Appellant since then could pose the worst of both worlds: possessing only stale information about Appellant *and* being viewed as unreliable judges of character (and possibly knowing about other bad acts committed by Appellant). Even if counsel should have investigated these witnesses to see if they had information or could testify in a way that would overcome this dilemma, Appellant has not shown that to be true of any of his proffered witnesses.[24]

We affirm the judgment of the court of appeals.

Delivered: February 9, 2022

Publish

---

[24] All of the proffered witnesses except the girlfriend would appear to fall within the "no contact for ten years" category, leading to the conclusion that any character information they had about Appellant was stale.