**Charles Earl SAMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–84–576–CR.**

Court of Appeals of Texas, Houston, (14th Dist.).

April 18, 1985.

Brian W. Wice, Houston, for appellant.

John B. Holmes, Dist. Atty., Winston E. Cochran, Jr., Asst. Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for burglary of a habitation with intent to commit theft. Appellant pled not guilty and a jury sentenced him to twenty-five years in the Texas Department of Corrections upon a finding of true to the enhancement allegation. In a single ground of error the appellant asserts that he was denied reasonably effective assistance of counsel at trial. We find no error and affirm.

Vickie Nail, the former maintenance manager at the Chateau Dijon Apartments, testified that on March 6, 1984, she observed a black male later identified as the appellant in the area of apartment 24 around 3:00 p.m. She did not recognize him as a resident of the complex so she called security. Nail then returned to apartment 24 and observed that the bedroom window was broken and the bedroom "a mess." Wayne Humbles, the resident in apartment 24, testified that his apartment was broken into sometime on March 6, 1984, while he was at work. When he returned home that evening the apartment was "in shambles" and his television set, stereo, speakers and some clothing were missing. He testified he did not know ap-

pellant nor did he give him consent to enter his apartment. He later found a black address book under his bed which did not belong to him or his friends but which contained appellant's name.

Larry McGlassen, another resident, testified that he was at the complex the afternoon of March 6 and saw a black male he later identified as the appellant. He saw appellant loading filled duffle bags into a Yellow Cab parked near apartment 24. McGlassen and another neighbor followed the cab and wrote down the license number before losing sight of the cab. A.W. Hardesty is a Houston police officer who lives at the apartment complex and works off-duty as a security guard. He was called to the complex on March 6, and received a description of the alleged burglar and the cab number from Nail. Hardesty called Yellow Cab to determine who was driving the cab that picked up appellant at the complex, then spoke with the driver and dispatched a police officer to the place the driver had dropped off appellant. The cab driver testified that he was called to pick up a fare at apartment 24 and upon arrival the appellant flagged him down in the complex parking lot. Appellant had a television, speaker and turntable wrapped in sheets, which he said he was taking because the apartment resident "owed him money for dope." The driver noticed a car following them and appellant offered him a bigger tip if he could lose the car. After appellant was dropped off, the driver called his superior to report what happened and minutes later the police contacted him. Officers Moran and Quinlan testified that they investigated the burglarized apartment, found signs of forced entry and received the address book which contained appellant's name.

Appellant details several instances before and during trial which he asserts constituted ineffective assistance of counsel.

■ The Sixth Amendment to the Constitution of the United States guarantees an accused "effective assistance" of counsel. The most recent authority which determines the standards used to evaluate whether counsel's assistance is so ineffec-

tive as to require reversal of a conviction is *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court established a two-part test to determine effectiveness of assistance. First, the accused must show that counsel's performance was so deficient that he was not functioning as "counsel" guaranteed by the Sixth Amendment. The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Second, the accused must show that counsel's errors were so serious as to deprive the accused of a fair trial. *Id.* at 2064.

With these standards in mind we review the instances which appellant claims denied him effective assistance of counsel.

■ Appellant first complains that counsel filed only a "boilerplate" Motion to Suppress while failing to file specific motions to suppress the oral statement made by appellant to the cab driver concerning the money allegedly owed for dope and the admission into evidence of the address book. He also complains that counsel requested only an oral Motion for Continuance when it appeared he was not prepared to proceed to trial, and that counsel did not request the court reporter to transcribe bench conferences. However, appellant fails to show how a more specific motion would have led to suppression of any harmful evidence. The cab driver's testimony regarding appellant's statement was not to show, as appellant contends, an extraneous offense, but rather to show why the driver thought appellant might be a burglar. The mere filing of pre-trial motions, for the sake of appearance, does not in and of itself effectively aid the defense of an accused. Appellant has failed to point out what motions could or should have been filed and how he would have benefitted from them. *Hunnicutt v. State,* 531 S.W.2d 618, 624 (Tex.Crim.App.1976). In addition, the record reflects that the trial court considered the merits of the oral request for continuance and considered it to be without substance. Even though the bench conference of which appellant com-

plains was unrecorded, he fails to show what evidence would have been presented in aid of his defense.

■ Appellant next complains that counsel conducted too narrow a voir dire examination. However, two potential jurors of whom appellant complains stated they would want to hear testimony from the accused before they could convict him, which would not, as appellant asserts, have been harmful to him. The third venireman of whom appellant complains did not serve on the jury.

■ Appellant also complains that counsel failed to investigate the facts concerning appellant's repeat offender status and was not prepared on the case. Appellant was indicted in another similar cause and counsel was prepared to go to trial under one cause but not the other. However, counsel stated the facts were similar in the two causes and he would proceed to trial. Appellant does not specify what additional evidence would have been available had the continuance been granted.

■ Lastly appellant complains of counsel's ignorance of the law, in particular regarding the oral Motion for Continuance, general objections, the failure to exclude appellant's pen packet, the failure to request a limiting charge on the "dope" statement, appellant's failure to testify, and the failure to call witnesses at the punishment phase of trial. These complaints are likewise without merit.

■ Viewing the totality of the circumstances, we can not hold that appellant did not receive a fair trial nor do we find that these "errors" contributed to his conviction. Appellant failed to hold any post-trial hearing to determine the competence of his trial attorney, whether the acts complained of represented incompetence or trial strategy and whether or not these acts prevented appellant from getting a fair trial. *See Dunn v. State,* 650 S.W.2d 139 (Tex.App.—Houston [14th Dist.] 1983, no pet.). The evidence of guilt was overwhelming and could not have been overcome by trial counsel.

We overrule appellant's ground of error and affirm the conviction.