**Affirmed and Majority and Dissenting Opinions filed September 19, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00922-CR

**ANTHONY WAYNE SYKES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1513135**

## MAJORITY OPINION

Appellant Anthony Wayne Sykes appeals his conviction for evading arrest or detention with a motor vehicle. *See* Tex. Penal Code Ann. § 38.04. Appellant initially entered into a plea bargain agreement with the State in which he pleaded guilty to evading arrest or detention with a motor vehicle. In exchange for appellant's guilty plea an adjudication of guilt was deferred, and appellant was placed on deferred adjudication community supervision for four years. Before appellant completed the four-year community supervision, the State moved to adjudicate

appellant's guilt on the ground that he violated his community supervision by committing another offense. In response to the State's motion to adjudicate, appellant entered a plea of true to the offense of unlawfully carrying a weapon, and the trial court signed a judgment adjudicating his guilt assessing punishment at nine years in prison. In three issues, appellant argues that he received ineffective assistance from his trial counsel. Concluding that appellant has not shown his counsel rendered ineffective assistance, we affirm the trial court's judgment.

## BACKGROUND

### I. Motion to Adjudicate Evading Arrest or Detention

Appellant pleaded guilty to the offense of evading arrest or detention in a motor vehicle in exchange for four years' deferred adjudication community supervision. One of the conditions of appellant's community supervision was that he commit no offense against the laws of Texas or any other state or of the United States.

Less than one month after receiving deferred adjudication appellant was arrested for unlawfully carrying a weapon and the State filed a motion to adjudicate the evading-arrest charge. Appellant entered a plea of true to the allegation that he unlawfully carried a weapon and the trial court proceeded to a hearing on the State's motion to adjudicate.

At the hearing the trial court asked appellant if he "freely, knowingly, and voluntarily" entered a plea of true to the offense of unlawfully carrying a weapon. Appellant answered yes that his plea was made freely, knowingly, and voluntarily. In response to further questions by the trial court appellant answered that he had sufficient time to discuss his plea with his attorney. Appellant acknowledged that he understood that the punishment range for evading arrest in a motor vehicle is two to

2

ten years in prison and a fine up to $10,000. Appellant further acknowledged the deportation consequences of his plea if he was not a United States citizen. Appellant denied any mental health diagnoses and stated that he understood the consequences of his plea of true. Appellant testified that he was satisfied with his attorney's performance. The trial court asked whether there was a plea bargain agreement, and appellant's trial counsel answered, "There was not, Your Honor." Appellant averred that he understood that by pleading true he was confessing that he violated his community supervision. Appellant voluntarily waived his Fifth Amendment right to remain silent and his Sixth Amendment right to confront witnesses against him.

Officer Alexander Farmer of the Houston Police Department testified that he was dispatched to an Aldi grocery store in response to a 911 call. The 911 caller was a manager at Aldi who reported there was an African-American male wearing all black clothing and motorcycle equipment in the store. The manager called 911 because the man matched the description of a man who had recently robbed two other Aldi locations. When Farmer arrived in the store the store manager flagged him down and pointed toward appellant who was in the back of the store. Appellant was walking around the back of the store wearing a ski mask obstructing his face with a motorcycle helmet over the ski mask.

Farmer and his partner approached appellant and told him that they needed to detain him because they suspected he had robbed other Aldi stores and was armed. Farmer placed handcuffs on appellant because appellant began to back away from the officers. Farmer asked appellant what he was doing in the store and appellant replied that he was buying groceries on his way home from his sister's house. Farmer searched appellant's backpack and found a firearm. Farmer reviewed video from the earlier robberies and believed appellant was the person who had robbed the other Aldi stores. Farmer testified that the clothing appellant wore was identical to that of

the robber and appellant's body size, mannerisms, and motorcycle helmet also matched that of the robber. The State introduced the surveillance video from the night appellant was arrested. The video was played, and Farmer identified appellant in the video.

Appellant testified that he understood the proceedings and that he pleaded true to the unlawful carrying of a weapon offense because it was true that he was carrying a weapon in the store. Appellant explained that his sister had bought the gun two days earlier and asked him to temporarily hold the weapon because she would be traveling with her husband who was a convicted felon. When appellant's sister moved into her new apartment appellant planned to give the weapon back to her.

Appellant explained that he was wearing a ski mask because it was cold outside. Appellant explained that he was wearing a motorcycle helmet while in the grocery store because he was using the Bluetooth speakers in the helmet to communicate with his sister on the phone. Appellant did not explain why he was wearing a ski mask in the store. On cross-examination appellant admitted that he knew it was against the law to carry the weapon in a grocery store, but testified, "I wasn't intending on getting arrested[.]"

During appellant's testimony the State sought to introduce the video of a previous aggravated robbery at another Aldi store. Appellant's counsel told the trial court he had not seen the video and expressed a desire to view it. The trial court recessed to permit appellant's counsel to review the video of the previous robbery. After the recess the video was played for the court. Appellant admitted the person who robbed the other Aldi store was wearing an identical motorcycle helmet and was wearing all black clothing. Appellant agreed that the robber's jacket had a logo that was very similar to the logo on appellant's jacket. Appellant denied that he was the person in the video who robbed the Aldi store.

4

Appellant's sister, Anechia Green, testified on his behalf. Green testified that appellant was not the person in the video from the previous Aldi robbery. Green testified that she purchased the gun appellant was carrying because she was moving into an area that was known for drugs and violence. Green wanted the weapon for protection. Green planned to get a license for the gun after purchasing it. Green gave the weapon to appellant because she was moving and did not want to be carrying the gun around while moving to a new apartment.

At the conclusion of the hearing the trial court found that appellant freely and voluntarily entered a plea of true and adjudicated appellant's guilt on the evading arrest in a motor vehicle charge. The trial court assessed punishment at nine years in prison.

## II.  Motion for New Trial

Appellant was appointed new counsel who filed a motion for new trial based on ineffective assistance of counsel. Appellant attached an affidavit to his motion for new trial, which stated:

> I was placed on a 4 year [deferred] probation January 6, 2017. I violated my probation by committing an offense [against] the law in the state of Texas. The offense was an UCW on Jan. 27, 2017. In March I hired an attorney by the name of Lott J. Brooks, III who initially approached me with a goal of a dismissal of this misdemeanor on a[n] early termination of my current probation. The following months Mr. Brooks would rarely appear to court to let me know about my case. In early May he finally approached me truthfully and advised me that the state of Texas did not want to dismiss the case and the current offer was a [deferred] probation that would run concurrent with my felony probation. After seeing no other option would be effective we agreed that pleading "no contest" would be the best option in hopes that not pleading guilty would help our chances for getting reinstated. Mr. Brooks then told me we would be doing a MAJ hearing but I asked him if we could avoid the hearing and just sign for 2 years TDC. After sitting for several month[s] awaiting the next answer from Brooks my family paid $9,000

5

to bond me out. We then were told that my court date would be Nov. 2, 2017 and it would not be a hearing. So we appeared to court ready for a regular court session but then were told to be ready for a hearing mere minutes in advance. I wasn't prepared and neither was Brooks. Judge Krocker sentenced me to 9 years TDC because I plead no contest to the misdemeanor and was advised to plead "true" at MAJ hearing.

The trial court held a hearing on appellant's motion for new trial at which appellant's trial counsel and appellant testified.

Appellant's trial counsel began his representation of appellant after the State filed the motion to adjudicate guilt. Appellant told trial counsel that the weapon he was carrying belonged to his sister and he was carrying it because she did not want the weapon in her home. Trial counsel thought he might be able to convince the State to dismiss the case because appellant was "simply traveling from one spot to another" with the weapon. Trial counsel later learned that the State would not dismiss the weapon charge because, in counsel's estimation, the felony prosecutor thought that appellant had "gotten away with an aggravated robbery."

Trial counsel tried to negotiate deferred adjudication community supervision in exchange for a no-contest plea on the weapon charge. Counsel recognized that even if appellant had an excuse for carrying a weapon, appellant's excuse was not a defense to the offense. Counsel thought he could negotiate an extension of the deferred adjudication community supervision on the evading-arrest charge if appellant admitted his guilt on the weapon charge.

Trial counsel testified that he advised appellant to plead no contest to the weapon charge because he hoped a no-contest plea would not result in an "automatic" revocation of community supervision. Trial counsel believed that the trial court would perhaps be more lenient with appellant after a no-contest plea rather than a conviction by a jury.

6

Trial counsel spoke with prosecutors for the State and tried to negotiate a continuation of deferred adjudication community supervision rather than an adjudication on the evading arrest charge. Trial counsel recommended that appellant plead true to the weapon charge in an attempt to mitigate punishment.

With regard to the Aldi robbery video and the video of appellant, trial counsel reviewed both videos and testified that the videos were "linked." Elaborating, trial counsel testified that the alleged robber was dressed "in exactly the same outfit," including a motorcycle helmet, that appellant was wearing the day he was arrested for carrying a weapon. Appellant was never charged with robbing the Aldi stores.

Trial counsel testified that before the adjudication hearing the State appeared to be unaware of the video. The trial court ordered the State to produce the clothing that appellant had worn. According to trial counsel, "along with the clothing, there was a video."

With regard to any plea bargain offers, trial counsel testified as follows:

Q. And up to that point had you ever plea bargained with the State to try to get a number?

A. I had.

Q. Okay. And what offer had the State made to you?

A. State had offered 4. But of course, that was again a final conviction.

Q. And I believe you just said a few minutes ago that you had talked to the Judge and the Judge indicated she would give you two?

A. That's correct. The Judge — well, we did not talk about that at this hearing, not yet, but the Judge did at one time offer him two years. But again, a felony conviction.

With regard to trial counsel's strategy in advising appellant to plead true to the weapon charge, counsel testified:

Again, I think it's kind of — it's kind of disrespectful when the

7

evidence clearly indicates that you are guilty, to walk in to a trier of facts, be it 12 people in the jury box, or one person being the Court, the Judge, to pretend and basically that is the best word I can think of, that to pretend that you're — you're going to be able to put on something that would show that you're not — well, and of course, in a hearing, not guilty, the issue we're looking at is preponderance of the evidence. So it's a situation where if the Judge believes more likely than not that you had a weapon, and the evidence was going to show that he clearly had a weapon. Not only the video, but the fact that he was arrested with a gun in his bag on that day in question.

*****

So we didn't want to give an impression that we weren't accepting responsibility. We wanted to accept the responsibility. Because it was clear at that point the Judge — we still thought maybe she could — she could adjudicate him and still keep him on probation and that would have been a final conviction, but still, it would have given him an opportunity to kind of keep his life straight.

Following trial counsel's testimony, appellant testified.

Appellant stated in his affidavit attached to the motion for new trial that he asked trial counsel if he could avoid a hearing and "sign for two years" in prison. Appellant testified that trial counsel told him the State had made an offer but "it wasn't exactly the two years." Appellant testified that his goal was "to not take any offer." Appellant's goal was to have his deferred adjudication community supervision reinstated to remove the felony charge from his record. Appellant then testified that after spending ten months in jail he was willing to "take the two years and be up for parole as soon as possible." With regard to a plea bargain offer, appellant testified:

Q. . . . Did you tell [trial counsel] you would take any other offer other than two TDC?

A. No, not exactly.

Q. If [trial counsel] had come to you with any other offer of 3 or 4, would you have considered taking that?

8

A. I would have definitely considered taking it just because I knew that going into a hearing, the possibility of getting the max was pretty high just because of the — I mean, the fact that I violated the way that I did by carrying a weapon, I was just almost certain that I would have gotten a pretty bad punishment.

At the conclusion of the hearing the trial court denied appellant's motion for new trial.

## ANALYSIS

Appellant asserts that he was denied his right to effective assistance of counsel. Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 1.051. This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland,* 466 U.S. at 688–92.

To have a court set aside a defendant's plea of true as involuntary based on the deficient performance of defendant's trial counsel in advising the defendant regarding the plea of true, the defendant must prove a reasonable probability that, but for trial counsel's deficient performance, the defendant would not have pleaded true. *See Lee v. U.S.*, —U.S.—,—, 137 S.Ct. 1958, 1965, 198 L.Ed.2d 476 (2017); *Miller v. State*, 548 S.W.3d 497, 499–500 (Tex. Crim. App. 2018). The appellant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Jackson v. State,* 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

A reasonable probability is one sufficient to undermine confidence in the outcome. *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). In determining whether an appellant has been prejudiced by counsel's deficient performance, the court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. But, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if no reasonable view of the record could support the trial court's ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). This is a deferential standard of review that requires appellate courts to view the evidence in the light most favorable to the trial court's ruling. *Id*. In applying this standard of review, we must presume that the trial court disbelieved evidence supporting appellant's ineffective-assistance claims. *See id*. at 821. In determining whether the trial court abused its discretion, an appellate court must not substitute its own judgment for that of the trial court, and it must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id*. at 820.

## I. Trial counsel did not render ineffective assistance by advising appellant to plead true to the unlawfully carrying a weapon offense.

In appellant's first issue he argues his plea of true to the State's motion to adjudicate was involuntary because he received ineffective assistance of counsel when his attorney advised him to plead no contest to the misdemeanor offense that formed the basis of the State's motion. Appellant pleaded no contest to the weapon charge and subsequently pleaded true to the same allegation in the State's motion to adjudicate.

A defendant's plea of true to the violations of the conditions of his community supervision must be voluntary. *LeBlanc v. State*, 768 S.W.2d 881, 882 (Tex. App.— Beaumont 1989, no pet.). When the record includes a prima facie showing that the plea was made voluntarily and knowingly, the appellant has the burden to show that he entered the plea without understanding its consequences. *Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). An appellant who attests when he enters his plea that he understands the nature of his plea and that it is voluntary has a heavy burden on appeal to show that his plea was involuntary. *Id.*

In the context of a claim that the defendant's plea is involuntary due to ineffective assistance of counsel, the defendant must show that (1) trial counsel's advice was outside the range of competency demanded of attorneys in criminal cases and (2) but for trial counsel's erroneous advice, the defendant would not have pleaded true. *Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999). A plea based on erroneous information conveyed to the defendant by his trial counsel is involuntary. *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex. Crim. App. 1984). The court must first make a threshold determination that counsel erroneously and incompetently advised the appellant before the second factor concerning prejudice to the appellant is reached. *Labib*, 239 S.W.3d at 333.

On appeal appellant argues that at the time he entered his plea of true he was misinformed because he did not know that the trial court had rejected the possibility of extending his community supervision and he also did not know that the State had previously made a plea bargain offer of two or four years in prison. Appellant further argues that his attorney rendered ineffective assistance by having him enter the no contest plea to the weapons charge before entering the plea of true to the motion to adjudicate.

By denying appellant's motion for new trial the trial court implicitly found

appellant's claims in his affidavit and his testimony at the hearing not credible. We must defer to the trial court's findings of credibility for affidavit evidence as well as for live testimony. *See Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006) ("[R]eviewing courts defer to the trial court's implied factual findings that are supported by the record.").

Appellant averred in his affidavit that he "violated [his] probation by committing an offense [against] the law in the state of Texas. The offense was an UCW on Jan. 27, 2017." Despite admitting his offense to the trial court appellant argues on appeal that his plea of true was involuntary because he thought his community supervision would be extended. At the hearing on the motion to adjudicate appellant testified that his plea was made freely, knowingly, and voluntarily. Appellant reported that he had sufficient time to discuss his plea with his attorney, and that he understood the applicable punishment range and the immigration consequences of his plea. Appellant testified that he was satisfied with his attorney's performance and that he understood that by pleading true he was confessing that he violated his community supervision. Appellant admitted that he knew it was against the law to carry the weapon into a grocery store, but testified, "I wasn't intending on getting arrested[.]" There is no evidence either in appellant's affidavit or his testimony that the order in which he entered his pleas rendered his pleas involuntary.

The only evidence of counsel's purported misrepresentation is appellant's affidavit testimony and his testimony at the motion-for-new-trial hearing. Appellant's uncorroborated testimony that he was misinformed by counsel does not meet his burden to show that his plea was involuntary. *See Fimberg*, 922 S.W.2d 205, 208 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). Appellant has not met the heavy burden on appeal to show that his plea was involuntary. *See Labib*, 239

S.W.3d at 332. Because appellant's uncorroborated testimony is the only evidence that he was given erroneous advice by his attorney that led to his guilty plea, appellant has not shown his plea was involuntary based on misinformation given him by appointed trial counsel. We overrule appellant's first issue.

## II. Trial counsel did not render ineffective assistance by failing to review the video of the aggravated robbery before the adjudication hearing.

In appellant's second issue he argues that trial counsel rendered ineffective assistance in not reviewing the extraneous offense video and clothing before the hearing or asking for a continuance to do so or objecting to the admission of these items.

At the hearing on the motion to adjudicate the State sought to play the video of the previous aggravated robbery at an Aldi grocery store. Appellant's counsel noted that he had not seen the video. The trial court recessed to allow counsel to review the video. The video was played, and appellant's witnesses were questioned about the video with the questioning focusing on similarities between appellant at the time he was arrested, and the robber of the Aldi stores.

Appellant was not charged with aggravated robbery. Appellant testified that the clothing he was wearing when he was arrested in the grocery store was common and did not necessarily match the clothing the robber was wearing in the video. Appellant's father and sister corroborated appellant's testimony about the ubiquity of the black clothing worn by appellant and the robber. Appellant argues that he was harmed by the "surprise" introduction of the robbery video because his counsel did not have time to prepare a defense to the extraneous robbery offense.

During the hearing on the motion for new trial counsel explained that introduction of the video was not completely unexpected. Counsel had not seen the clothing appellant was alleged to have been wearing on the day he was arrested.

13

When the clothing was produced the video was also produced. Counsel testified that he and appellant had not reviewed the video earlier because appellant "was very adamant that it was not him[.]" Counsel noted that at the adjudication hearing appellant argued that the clothing was "pretty generic, basically wearing dark clothing[.]" Counsel further noted that the motorcycle helmet was common and there were "thousands of those leather type outfits." Appellant was adamant that the robber in the video was not him.

In the cases cited by appellant in which the courts found ineffective assistance of counsel for failure to investigate, the records were clear that at least some exculpatory evidence existed. In *Ex parte Rogers*, for example, two extraneous sexual assault offenses were admitted into evidence during the punishment phase. 369 S.W.3d 858, 860–61 (Tex. Crim. App. 2012). One of the extraneous offenses was substantially similar to the offense for which Rogers was convicted. *Id.* The other extraneous offense bore little if any similarity to the offense, and, in fact, DNA of the perpetrator in the second offense had been collected, which could have been compared to Rogers' DNA. *Id.* at 861. The Court of Criminal Appeals held that had counsel adequately investigated the extraneous sexual assault before trial, he would have had stronger grounds to request that the prejudicial testimony of the victim be excluded. *Id.* at 864.

In *Melton v. State*, cited by appellant, the defendant was charged with robbery. 987 S.W.2d 72, 73 (Tex. App.—Dallas 1998, no pet.). The defendant told his appointed attorney that he planned to plead not guilty because he experienced alcohol-induced blackouts and did not remember committing a robbery. *Id.* at 74. Melton testified at a motion-for-new-trial-hearing that he changed his plea to guilty because his attorney told him there was a video of Melton committing the robbery. *Id.* At a hearing Melton and several family members testified that the attorney had

14

told them that the State had a video of appellant committing the robbery, but there was "no chance" they would be able to review the video. *Id.* Melton's attorney acknowledged that he told Melton there "might" be a video and "if there was a videotape and he turned out to be on the videotape, that that [sic] would be hard to claim that he was innocent of the offense." *Id.* at 74–75. Both sides stipulated that there was never a video of the crime for which Melton was charged. *Id.* at 75. The Dallas Court of Appeals held that Melton's trial counsel had a duty to determine with certainty whether a video existed and whether Melton was depicted on the video. *Id.* at 77. Because counsel had not fulfilled that duty the court held Melton's trial counsel's representation fell below an objective standard of reasonableness. *Id.*

A criminal defense attorney must have a firm command of the facts of the case as well as the governing law before he can render reasonably effective assistance to his client — both in and out of the courtroom. *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). Counsel therefore has a duty to make reasonable investigations. *Strickland*, 466 U.S. at 691. When assessing the reasonableness of an attorney's investigation, we consider the quantum of evidence known by the attorney to determine whether the known evidence would have led a reasonable attorney to investigate further. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006).

Based on our review of the record, we are unable to affirmatively say that, by a preponderance of the evidence, the performance of appellant's trial counsel in this case fell below an objective standard of reasonableness. *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Here, before trial, counsel did not investigate the possibility of the video because appellant was adamant that he did not rob the other Aldi store and any video would be irrelevant. Trial counsel learned of the video before appellant's sentencing and was able to review it. As such, counsel was able to develop a reasonable trial strategy of attempting to show the generic

nature of the clothing and helmet worn by the robber and appellant, casting doubt on whether appellant was the same individual who robbed the Aldi grocery stores.

In arguing trial counsel failed to properly investigate, appellant has not overcome the strong presumption in favor of the reasonableness of counsel's professional assistance. *See Strickland*, 466 U.S. at 689. Because appellant fails to establish the first prong of the *Strickland* test, we do not reach the second prong. *See Fimberg*, 922 S.W.2d at 208. We overrule appellant's second issue.

### III. Trial counsel did not render ineffective assistance by failing to communicate a plea-bargain offer to appellant.

In appellant's third issue on appeal and in arguing his first issue appellant contends he received ineffective assistance of counsel because trial counsel failed to advise appellant of a two- or four-year plea bargain offer.

Failure of a criminal defense counsel to inform his or her client of plea offers made by the State falls below an objective standard of professional reasonableness. *Ex parte Argent*, 393 S.W.3d 781 (Tex. Crim. App. 2013) To establish prejudice from the ineffective assistance of counsel because defense counsel does not tell his or her client about a plea offer, the appellant must show a reasonable probability that (1) he or she would have accepted the offer if it had been communicated, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the plea agreement. *Id*. at 784; *Piland v. State*, 453 S.W.3d 473, 475–76 (Tex. App.—Texarkana 2014, pet. ref'd).

Before we address prejudice, however, we review whether the record supports appellant's contention that his trial counsel did not communicate a plea bargain offer to him. The only mention of a potential plea bargain agreement in appellant's affidavit is his desire to "avoid a hearing and just sign for 2 years TDC." In the hearing on the motion for new trial, trial counsel testified that the State had made an

16

offer of three to four years in prison and that "the Judge did at one time offer [appellant] two years." Thus, trial counsel testified that the trial court had indicated to trial counsel that the trial court would accept a two-year plea if the State agreed to it. Trial counsel did not testify that the State had made an offer of two years. The record contains no evidence that the State offered two years. We presume for the sake of argument that appellant also complains of trial counsel's failure to communicate the trial court's statements indicating that the trial court would accept a two-year plea if the State agreed to it.

Trial counsel did not testify that he did not communicate the three- to four-year offer to appellant, and, implied by his testimony that if a two-year offer had been made, it was made by the trial court to appellant. Appellant testified that he did not inform trial counsel he was willing to accept an offer of more than two years. Moreover, appellant did not testify that counsel failed to communicate such an offer. Likewise, there is no evidence that trial counsel failed to communicate to appellant the trial court's statements indicating that the court would accept a two-year plea if the State agreed to it.

Our dissenting colleague asserts that we are assuming that appellant could have received a plea-bargain offer from the trial court rather than from the State. We make no such assumption. We are discussing the evidence, including trial counsel's testimony that "the Judge did at one time offer [appellant] two years." We realize that the trial court did not make a plea bargain to appellant, and we understand this testimony to mean that the trial court indicated to trial counsel that the trial court would accept a two-year plea bargain if the State agreed to it.

Our dissenting colleague also opines that the State and the defense rarely approach the trial court regarding a proposed plea bargain in the defendant's presence until the trial court is preparing to accept the plea agreement and all the

17

plea paperwork has been completed. Our colleague cites no evidence in the record or legal authority to support this proposition. Even if this proposition were correct, we base our ruling on the absence of evidence showing failure to communicate, not on evidence that appellant learned about a plea offer through appellant's presence at a hearing at which the plea was discussed.

Because the record contains no evidence of trial counsel's purported failure to communicate a plea bargain offer or the trial court's statements regarding a two-year plea, appellant has failed to show that counsel's representation fell below an objective standard of professional reasonableness. We overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's three issues on appeal, we affirm the trial court's judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan (Hassan, J., dissenting).

Publish — Tex. R. App. P. 47.2(b).

18